

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00192-CR

DAVON D. CRENSHAW                                         APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1317429D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Davon D. Crenshaw of robbery by threats. *See* Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). In two issues, Crenshaw argues that the trial court erred by admitting a hearsay statement and by improperly commenting on the weight of the evidence. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL BACKGROUND

Joel Palacios testified that he was driving his brother Federico's truck around 4 p.m. on August 7, 2012, on Interstate 30 in Arlington when it broke down. Joel phoned Federico to determine whether he should call a tow truck; Federico instructed Joel to leave the truck on the side of the highway and said that after Federico got off work, they would go see if they could fix it.

Joel and Federico arrived back at the truck around 7:15 p.m. Joel testified that as they approached the truck, they saw two men—one, "pretty stocky [and] more muscular," was inside the truck "messing around with the steering wheel," and the other was leaning into the truck. Federico exited his vehicle and started walking to the truck, and Joel made his way to the truck as well. The passenger-side window of Federico's truck had been smashed. Inside the truck, the steering wheel lever had been ripped off and was on the front seat. Joel testified that it looked like the men were trying to steal Federico's truck. Joel asked the men what they were doing, and the stocky man said that they were moving their friend's truck. Joel responded, "Well, that's kind of funny because this is my brother's truck."

The stocky man then tried to divert the conversation away from the truck, and Joel called 911 because he thought the situation "might escalate to a threatening situation." Federico talked to the stocky man, asking when the man's "friend" was going to show up. When the stocky man walked to his van, Federico sat on the truck's bumper and wrote down the van's license plate number. When

2

the van started backing up, Federico snapped a picture of the license plate. The stocky man put the van in park, exited the van, and grabbed Federico's right arm. Federico "jumped away," causing his right sleeve to rip off his shirt; the stocky man's grip on Federico's arm caused a scratch. Federico realized that he was holding the steering wheel lever, and he raised it up in his fist. Federico said the stocky man backed away and yelled, "Now I know who to shoot," as he walked back to his van. Federico testified that he was afraid that the stocky man was going to cause him imminent bodily injury or death.

While Joel was on the phone with the 911 operator, he heard the stocky man say to Federico, "Well, I'll just get my gun and shoot you then."[2] Joel said he "got a little frightened" at that point because he saw the stocky man grab Federico's arm and rip Federico's shirt and heard the comment about the gun. Joel motioned to Federico that they needed to leave, and they quickly walked to and got in their car. The stocky man and the other man left in the van. Joel stayed on the phone with the 911 operator and relayed the van's license plate number.

Joel and Federico sat in their car and waited for the police to arrive. The police traced the van's license plate to Crenshaw. Later, Federico selected Crenshaw from a photo spread, identifying him as the stocky man. Federico

---

[2]The tape of the 911 call was played for the jury. During cross-examination, defense counsel stated, "[W]e heard on the 911 tape, you heard somebody say he threatened to shoot my brother?" Joel testified that he was the person on the tape who said he had heard that threat.

3

testified that Crenshaw was the man he had encountered when he and Joel tried to retrieve the truck.

After hearing the above evidence, the jury found Crenshaw guilty of the offense of robbery by threats as charged in the indictment. Crenshaw pleaded true to the habitual offender paragraph in the indictment, and after hearing evidence during the punishment phase, the jury assessed his punishment at forty years' confinement. The trial court sentenced him accordingly. Crenshaw then perfected this appeal.

### III. ADMISSIBILITY OF OUT-OF-COURT STATEMENT OF THREAT AND SUFFICIENCY OF THE EVIDENCE

In his first issue, Crenshaw argues that the trial court abused its discretion by allowing the State to introduce an out-of-court statement constituting evidence of a threat. Crenshaw further argues that absent this allegedly improperly admitted out-of-court statement, the evidence is insufficient to support his conviction for robbery by threats. The out-of-court statement that Crenshaw complains of is Joel's statement that he had heard the stocky man say to Federico: "Well, I'll just get my gun and shoot you then"; Crenshaw argues that he objected to the statement as hearsay because the declarant of the statement "had yet to be identified."

### A. Admissibility of Statement

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App.

4

2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. Tex. R. Evid. 801(e)(2)(A). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). The admission of inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection that proves the same fact sought to be proven by the evidence erroneously admitted. *Brown v. State*, 757 S.W.2d 739, 741 (Tex. Crim. App. 1988). "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

At trial, the State asked Joel what the stocky man had said to him during the encounter, and Crenshaw objected that the question called for hearsay because the stocky man had not yet been identified. The trial court sustained the objection. This pattern reoccurred several times, and the trial court ultimately overruled Crenshaw's objection. A conference was held outside the jury's

5

presence. The State explained that subsequent evidence would establish that the stocky man was Crenshaw—as identified by Federico from a photo spread—and that his statements were therefore admissible as statements by a party opponent.

When the jury returned, the State resumed its questioning of Joel, and he answered other questions about what the stocky man had said. Crenshaw then asked for a running objection concerning anything said by the stocky man, and the trial court granted it. Joel later testified that the stocky man had said, "Well, I'll just get my gun and shoot you then." Federico testified that he recognized Crenshaw from a photo spread as the stocky man; Crenshaw did not object. A police detective also testified without objection that Federico had picked out Crenshaw's photo from a photo spread as the man who had threatened him. Federico also testified without objection that the stocky man had said, "Now I know who to shoot."

In light of the evidence that the stocky man was Crenshaw, the statement complained of—"Well, I'll just get my gun and shoot you then"—is not hearsay but the admission of a party opponent. *See* Tex. R. Evid. 801(e)(2)(A); *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd) (explaining that a statement is not hearsay if it is offered against a party and is his own statement); *see also Barrett v. State*, No. 12-13-00185-CR, 2014 WL 4243658, at *2 (Tex. App.—Tyler Aug. 27, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that 911 tape including appellant's voice was not hearsay even though it

6

was admitted before the voice was identified as appellant's during chief deputy's testimony and later witness identified the voice on the tape as appellant's). Moreover, the error, if any, in admitting Joel's testimony of Crenshaw's statement over his running objection that the statement constituted hearsay because the declarant had not yet been identified was rendered harmless by the subsequent admission of unchallenged testimony identifying Crenshaw as the stocky man who had made the statement. *See Leday*, 983 S.W.2d at 717; *Brown*, 757 S.W.2d at 741; *O'Neill v. State*, 681 S.W.2d 663, 671 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (explaining that the trial court's premature admission of exhibit despite lack of full predicate was rendered harmless when another witness established predicate and admissibility of exhibit); *see also Barrett*, 2014 WL 4243658, at *2.

## B. Sufficiency of the Evidence

Crenshaw also argues under his first issue that absent the improper admission of the above complained-of statement, "I'll just get my gun and shoot you then," there exists no evidence to support an essential element of his conviction for robbery by threats—a threat. Crenshaw's argument fails because (1) we have held that the trial court did not abuse its discretion by admitting the complained-of statement, and (2) even if we had not reached that conclusion, we could consider the complained-of statement as part of our due-process sufficiency review because we are to consider all evidence, even improperly

admitted evidence. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

The elements of the offense of robbery by threats are that a person (1) in the course of committing theft (2) with intent to obtain and maintain control of property (3) intentionally or knowingly (4) threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2). Theft is defined as the unlawful appropriation of property with intent to deprive the owner of that property. *Id.* § 31.03(a) (West Supp. 2014).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The jury was entitled to believe or to disbelieve the testimony of Joel and Federico, including their testimony concerning the damage to Federico's truck, Crenshaw's presence at the truck and his claim that he was there to move his friend's truck, Crenshaw yelling at Federico that he knew who to shoot, and Federico's fear of imminent bodily injury or death. Viewing the evidence in the

8

light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime of robbery by threats beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dickson v. State*, Nos. 02-10-00176-CR, 02-10-00177-CR, 02-10-00178-CR, 2011 WL 754355, at *3 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support conviction for robbery by threats).

## C. Disposition of First Issue

Having found against Crenshaw on the arguments he raises in his first issue, we overrule his first issue.

## IV. COMMENT ON THE WEIGHT OF THE EVIDENCE

In his second issue, Crenshaw argues that the trial court improperly commented on the weight of the evidence during the guilt-innocence phase of the trial. The following exchange occurred during the State's examination of Federico:

> Q. Let me show you 10-A. Did you identify one of the photographs in here as the person, the stocky man that actually assaulted you in this robbery?
>
> A. Yes, ma'am.
>
> Q. Which number in all of these photographs --
>
> [DEFENSE COUNSEL]: Your Honor, I object to her classifying this as assaulted you in the robbery. There's no indication that a robbery has occurred. That is a conclusion.

[PROSECUTOR]: Your Honor, the evidence has directly presented that a robbery occurred.

THE COURT: *Yeah.* I will overrule. [Emphasis added.]

Crenshaw argues that by commenting, "Yeah. I will overrule," immediately after the State's comment that "the evidence has directly presented that a robbery occurred," the trial court implicitly approved of the State's assertion that a robbery had actually occurred. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979) (providing that a judge shall not make any remark calculated to convey to the jury his opinion of the case).

After the above colloquy, defense counsel asked to approach the bench outside the presence of the jury. During the conference, defense counsel argued that the trial court, in overruling the defense's objection, had made "an improper statement regarding the weight of the evidence that the jury may take and infer that the robbery has, in fact, occurred at this point." Defense counsel asked for a mistrial, stating that a limiting instruction to the jury would not be helpful, and the trial court denied the motion for mistrial. When the jury was brought back in, the trial court stated,

Now, let me just make this statement, ladies and gentlemen. When the Court makes a ruling, the Court is merely responding to an objection made by counsel. And you are not to infer from my ruling that I have any opinion about the guilt or innocence of the Defendant in this case. That's what y'all must decide, not me.

Even assuming, without deciding, that the trial court erred by commenting, "Yeah," before ruling on Crenshaw's objection, and even assuming that the

10

constitutional harm standard of review applies, nonetheless, we are able to determine beyond a reasonable doubt that the error did not contribute to Crenshaw's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

We have detailed above the evidence supporting Crenshaw's conviction for the offense of robbery by threats. Moreover, any prejudicial effects of the trial court's comment were eradicated by the jury instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (presuming that jury follows trial court's instructions in the manner presented); *Tennison v. State*, 814 S.W.2d 484, 486 (Tex. App.—Waco 1991, no pet.) (stating that prejudicial effects of court's comments can generally be eradicated by a jury instruction to disregard any comments judge has made). We therefore hold that the trial court's comment was harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Williams*, 958 S.W.2d at 195; *Tennison*, 814 S.W.2d at 486 (holding that trial court's instruction to disregard its comment on the credibility of the State's witness sufficiently removed any taint from minds of jurors and rendered judge's comment harmless). Thus, even assuming error, we conclude that any error was harmless and did not contribute to Crenshaw's conviction, and we overrule Crenshaw's second issue.

## V. Conclusion

Having overruled both of Crenshaw's issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 2, 2015